1
2
3
4
5
6
7
8
9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13   MANUEL DAVID LUGO,                    CASE NO. 07-CV-109 W (POR)

14

15                          Plaintiff,     **ORDER GRANTING**

16        v.                               **THE DMV'S MOTION**

17   GEORGE VALVERDE, as                   **TO DISMISS**

18   DIRECTOR OF THE CALIFORNIA

19   DEPARTMENT OF MOTOR

20   VEHICLES, et al.,

21

22                          Defendants.

23

24        Plaintiff Manuel David Lugo filed a civil-rights complaint against Defendant

25   George Valverde (the DMV) alleging that the DMV violated his right to procedural due

26   process under 42 U.S.C. § 1983.  The DMV moved to dismiss.  Because res judicata

27   precludes Lugo from reasserting a constitutional claim, and in any event, his complaint

28   fails to state a claim, the court will **GRANT** the motion.

I.      **Background**

On July 24, 2005, in the early morning, Lugo called the San Diego Police after another driver rear-ended his car. (Compl. ¶ 10.) When they arrived, Lugo maintained that the engine was off and the emergency flashers were on at the time of the accident. (Id.)  Because the reporting  officer observed that Lugo exhibited objective signs of alcohol intoxication—Lugo had bloodshot eyes and alcohol on his breath, lacked balance, and slurred his speech—the officer arrested Lugo for driving a vehicle while intoxicated. (Def.'s Mem. in Supp. at 3.)  Breath tests showed Lugo's blood-alcohol concentration ("BAC") at 0.11 and 0.10 percent.  (Id.)

On August 18, 2005, the DMV held a hearing before Driver Safety Officer Felicia Davis, an employee of the DMV.  (Compl. ¶ 12.)  By statute, an "administrative per se" hearing must occur before the DMV may suspend a license for driving under the influence of alcohol.  Prior to the hearing, Lugo requested that all available passengers and percipient witnesses be permitted to testify that he was not driving.  (Id.)  DSO Davis denied the request, limiting Lugo to two of the four witnesses he wanted.  The reporting officer also testified that Lugo admitted he was driving.  (Id.)  DSO Davis credited the reporting officer's testimony, and suspended Lugo's license for four months. (Id.)

On December 14, 2005, the DMV held a second administrative-per-se hearing regarding Lugo's suspension.  (Def.'s Mem. in Supp. at 4 (citing RJN, Ex. B at 1–2).)  DSO Davis again denied Lugo's request to allow the excluded witnesses to testify. (Compl. ¶ 14.)  The reporting officer again testified that Lugo admitted to being the driver (Def.'s Mem. in Supp. at 4), however, he could not recall whether the parked vehicle's engine was running when he arrived or who had the keys to the car.  (Id.)  Neither the officer nor his report stated that he witnessed Lugo driving. (Compl. ¶ 10.) On December 20, 2005, the DMV issued a decision upholding the written decision of the first administrative-per-se hearing to suspend Lugo's license.  (Id.)
//

1    On August 21, 2006—over eight months later—Lugo petitioned for a writ of
2    mandate in San Diego Superior Court to overturn the suspension of his driver's license.
3    (Compl. ¶ 18.)  Lugo asserted that the DMV failed to meet its burden of proof, and
4    failed to afford him a fair hearing "under applicable standards of due process, statutory
5    and constitutional provisions." (Def.'s Mem. in Supp. at 4.)  On December 5, 2006, the
6    Hon. Eugenia Eyherabide entered a judgment denying Lugo's petition for writ of
7    mandate to overturn the four-month suspension of his driver's license.  (Id. at 6.)

8    On January 8, 2007, the DMV sent a letter notifying Lugo that it would suspend
9    his California driver's license for four months beginning on January 16, 2007. (Compl.
10   ¶ 19.)  The letter stated that Lugo would be prosecuted if he failed to surrender his
11   driver's license under California Vehicle Code § 14610.  (Id.)  The letter also stated, "If
12   you drive while your privilege is suspended or revoked you may be arrested, and if
13   convicted, you may be jailed, fined, or both. **THIS ACTION IS INDEPENDENT OF**
14   **ANY OTHER ACTION TAKEN BY THE COURT OR THIS DEPARTMENT.**"
15   (Id.)

16   On January 16, 2007, Lugo commenced this action  for injunctive relief to
17   prevent the DMV from suspending his license.  He alleged that the DMV deprived him
18   of liberty without due process under the Fifth and Fourteenth Amendments of the
19   United States Constitution.  (Compl. ¶ 1.)  On February 6, 2007, the DMV filed a
20   motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Def.'s
21   Mem. in Supp. at 1.)

22

23   **II.    Legal Standard**

24   A motion to dismiss under  Rule 12(b)(6) tests the complaint's sufficiency.  See
25   N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  In reviewing
26   a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all
27   factual allegations and must construe them in the light most favorable to the nonmoving
28   party.  Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002).  The complaint and

1   all reasonable inferences therefrom are construed in the plaintiff's favor.  <u>Walleri v. Fed.</u>
2   <u>Home Loan Bank of Seattle</u>, 83 F.3d 1575, 1580 (9th Cir. 1996).   Nevertheless,
3   conclusory legal allegations and unwarranted inferences are insufficient to defeat a
4   motion to dismiss.  <u>Ove v. Gwinn</u>, 264 F.3d 817, 821 (9th Cir. 2001).

5          In other words, while a complaint "does not need detailed factual allegations," it
6   must include "more than labels and conclusions."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.
7   —, — (2007).  "Factual allegations must be enough to raise a right to relief above the
8   speculative level on the assumption that all of the complaint's allegations are true."  <u>Id.</u>
9   Arguments relying on conclusory legal allegations or unwarranted inferences do not help
10  to defeat a motion to dismiss.  <u>Ove v. Gwinn</u>, 264 F.3d 817, 821 (9th Cir. 2001).

11         Generally, the court may not consider material outside the complaint when ruling
12  on a motion to dismiss.  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d
13  1542, 1555 n.19 (9th Cir. 1990).  It may, however, consider any documents specifically
14  identified in the complaint whose authenticity is not questioned by the parties.  <u>Fecht</u>
15  <u>v. Price Co.</u>, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995).  Moreover, the court may consider
16  the full text of those documents, even when the complaint quotes only selected
17  portions.  <u>Id.</u>  The court may also consider material properly subject to judicial notice
18  without converting the motion into a motion for summary judgment.  <u>Barron v. Reich</u>,
19  13 F.3d 1370, 1377 (9th Cir. 1994) (citing <u>Mack v. South Bay Beer Distribs., Inc.</u>, 798
20  F.2d 1279, 1282 (9th Cir. 1986)).

21

22  **III.   <u>Discussion</u>**
23  **A.     Res judicata bars Lugo's civil-rights claims.**
24         According to the full faith and credit statute, a party may not raise a claim that
25  another court already resolved.  <u>See</u> 28 U.S.C. § 1738 (1996); <u>San Remo Hotel, L.P. v.</u>
26  <u>City & County of S.F.</u>, 545 U.S. 323, 336 (2005).  "[Full faith and credit] has long been
27  understood to encompass the doctrines of res judicata, or 'claim preclusion,' and
28  collateral estoppel, or 'issue preclusion.'"  <u>San Remo Hotel,</u>545 U.S. at 336 (quoting

07cv109

1   Allen v. McCurry, 449 U.S. 90, 94 (1980)).  Federal courts must apply the law of res

2   judicata in the state where they sit.  Takahashi v. Bd. of Trs., 783 F.2d 848, 851 (9th

3   Cir. 1986); Valley Wood Preserving, Inc. v. County of Stanislaus, 785 F.2d 751, 752

4   (9th Cir. 1986) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81

5   (1984)).

6         Under California law, res judicata precludes a plaintiff from litigating a claim if

7   (1) the claim relates to the same "primary right" as a claim in a prior action, (2) the

8   prior judgment was final and on the merits, and (3) the plaintiff was a party or in privity

9   with a party in the prior action.  Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 651 (9th

10  Cir. 1988); Trujillo v. County of Santa Clara, 775 F.2d 1359, 1366 (9th Cir. 1985).

11  "California, as most states, recognizes that the doctrine of res judicata will bar not only

12  claims actually litigated in a prior proceeding, but also claims that could have been

13  litigated."  Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364

14  (9th Cir. 1993); see Valley Wood, 785 F.2d at 754 (ruling that res judicata precluded

15  claims because the party could have raised them in a prior action).  Here, res judicata

16  prevents Lugo from litigating his § 1983 claim against the DMV because he could have

17  raised, and possibly did raise, constitutional claims in state court.

18

19  **1.    *Lugo's petition claimed harm to the same primary right as his § 1983 claim.***

20        To determine the scope of a claim, California courts employ the "primary right"

21  theory."  Takahashi, 783 F.2d at 851; Trujillo, 775 F.2d at 1366.  Under this theory,

22  "the violation of one primary right gives rise to a single cause of action."  Takahashi, 783

23  F.2d at 851 (quoting Slater v. Blackwood, 15 Cal. 3d 791, 795 (Cal. 1976)).  A primary

24  right is defined in terms of the harm suffered by the plaintiff , or the substantive right

25  allegedly invaded—regardless of the legal theory of redress.  Id. (quoting Argarwal v.

26  Johnson, 25 Cal. 3d 932, 935 (1979)); Brown v. County of San Joaquin, 601 F. Supp.

27  653, 657 (E.D. Cal. 1985) (citing Mattson v. City of Costa Mesa, 106 Cal. App. 3d 441

28  (1980)); Stafford v. Yerge, 129 Cal. App. 2d 165 (1954).  Thus, for the purposes of res

1    judicata, two claims constitute a single cause of action if they both seek redress for harm

2    to the same primary right.  City of Simi Valley v. Sup. Ct., 4 Cal. Rptr. 3d 468, 472 (Cal.

3    Ct. App. 2003).

4         Lugo alleges that the DMV invaded his right to procedural due process by

5    suspending his driver's license without a full and fair hearing.  (Compl. ¶ 1.)  The U.S.

6    Constitution states that no state shall "deprive any person of life, liberty, or property,

7    without due process of law."  U.S. Const. amend. XIV § 1.  Lugo's driver's licence is

8    undoubtedly a property interest entitled to the safeguards of procedural due process.

9    Dixon v. Love, 431 U.S. 105, 112 (1977).  Lugo sought judicial review of the

10   administrative hearing in state court because he claimed the DMV did not comport with

11   constitutional standards of procedural due process.  He did not prevail.

12        Thus, the court must decide whether Lugo now claims harm to a different primary

13   right, or merely seeks redress using a different legal theory.  See City of Simi Valley, 4

14   Cal. Rptr. 3d at 472.  Here, Lugo seeks redress because he claims the DMV violated his

15   14th Amendment right to procedural due process.  (Compl. ¶ 1.)  But § 1983 only

16   provides a federal remedy for constitutional violations; it is not an independent source

17   of primary rights.  42 U.S.C. § 1983 ("Every person who . . . subjects, or causes to be

18   subjected, any citizen of the United States . . . *to the deprivation of any rights, privileges,*

19   *or immunities secured by the Constitution* . . . shall be liable to the party injured in an

20   action at law . . . for redress . . . .").  During judicial review in state court, Lugo asserted

21   that he "was not afforded a fair hearing in this matter, under applicable standards of due

22   process, statutory and constitutional provisions."  (Def.'s Mem. in Supp. at 4.)  Because

23   § 13559 of the California Vehicle Code permitted the state court to consider the DMV's

24   constitutional authority, Lugo properly raised—or at the very least, could have raised—a

25   constitutional challenge.  Therefore, Lugo cannot, regardless of the legal theory or form

26   of proceeding, bring another claim involving the same primary constitutional right.

27   //

28

07cv109

1    *2.     The state-court judgment was final and on the merits.*

2         "A decision on a petition for writ of mandate seeking review of an administrative

3    order is considered a final decision on the merits for res judicata under California law."

4    <u>Mir</u>, 844 F.2d at 651 (citing <u>Trujillo</u>, 775 F.2d at 1366); <u>Clark v. Yosemite Cmty. Coll.</u>,

5    785 F.2d 781, 784 (9th Cir. 1986) ("It is well established in California that the doctrine

6    of res judicata applies to judgments in mandamus proceedings") (quoting <u>Eichman v.</u>

7    <u>Fotomat Corp.</u>, 197 Cal. Rptr. 612, 614 (Cal. Ct. App. 1983)).  The state court could

8    have reviewed whether the DMV exceeded its statutory and *constitutional* authority.

9    Cal. Veh. Code § 13559.  Prior to judicial review, the California Vehicle Code permits

10   a person to seek an administrative hearing with the DMV before a hearing

11   officer—Lugo received two hearings—where evidence may be presented prior to the

12   date the suspension becomes effective.  Cal. Veh. Code §§ 14100–14112.  Though the

13   hearing officer has the discretion to exclude cumulative evidence, this discretion is

14   limited to the introduction of cumulative evidence similarly afforded in judicial actions.

15   Cal. Gov. Code § 11513(f); Cal. Evid. Code, § 352; <u>Horn v. Gen. Motors Corp.</u>, 17 Cal.

16   3d 359, 371 (Cal. 1976).  Thus, Lugo utilized all aspects of a cohesive process

17   culminating with a final state-court judgment on the merits.  This court is not at liberty

18   to disregard that judgment to allow Lugo to litigate his claim again.  <u>See</u> <u>Takahashi</u>, 783

19   F.2d at 850–52.

20        In short, Lugo's § 1983 claim stems from alleged constitutional defects in the

21   DMV's administrative-per-se hearing—defects which the state court could, and

22   probably did, consider.  Thus, the procedural-due-process claim is based on the same

23   "primary right" as the claim that was or could have been brought in state court.  Lugo

24   only has *one* primary right to procedural due process under the 14th Amendment.  <u>See</u>

25   <u>Mir</u>, 844 F.2d at 653.  He has merely presented a new legal theory of recovery: § 1983.

26   But the state-court judgment must receive full faith and credit, so res judicata bars him

27   from suing on that primary right a second time.  <u>See</u> <u>Mir</u>, 844 F.2d at 651–52 (finding

28   § 1983 claims barred because it was based on the same "primary right" presented in a

1   prior petition for writ of mandate); <u>Clark</u>, 785 F.2d at 786 (finding § 1983 claim for

2   violation of due process barred where claim was based on denial hearing that was the

3   express complaint in prior mandate proceeding); <u>Patrick Media Group, Inc. v. Cal.</u>

4   <u>Coastal Comm'n</u>, 9 Cal. App. 4th 592, 617 (1992).

5

6   **B.   Even if Lugo had not already litigated his dispute with the DMV, he fails to**

7   **state a claim under § 1983.**

8        Lugo brings this suit under 42 U.S.C. § 1983 for a violation of his rights to due

9   process and liberty under the Fifth and Fourteenth Amendments of the United States

10  Constitution.  Two threshold allegations are required to state a claim under § 1983: (1)

11  some "person" deprived the plaintiff of a federal right, and (2) that person acted "under

12  color of" state or territorial law.  <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980).  The

13  DMV concedes that Lugo asserted the threshold § 1983 allegations.  (Def.'s Mem. in

14  Supp at 14.)  Further, the DMV also concedes that the suspension of Lugo's driver's

15  license affects a property interest and thus entitles him to the safeguards of procedural

16  due process.  (<u>Id.</u> n.6 (citing <u>Dixon v. Love</u>, 431 U.S. 105, 112 (1977)).)

17       Because § 1983 is a remedial statute, it does not create any substantive rights.

18  Rather, it allows a party to enforce other constitutional and federal statutory rights

19  through litigation.  Here, Lugo sues under the 14th Amendment itself.  Thus, the court

20  must decide whether California's license-suspension procedure violates the 14th

21  Amendment, either facially or as applied against Lugo.  Courts must consider three

22  factors in procedural-due-process challenges:

23       [F]irst, the private interest that will be affected by official action; second,
         the risk of an erroneous deprivation of such interest through the
24       procedures used, and the probable value, if any, of additional or substitute
         procedural safeguards; and finally, the Government's interest, including
25       the function involved and the fiscal and administrative burdens that the
         additional or substitute procedural requirement would entail.
26

27  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).  While Lugo's interest in his driver's

28  license is undoubtedly important, the court concludes that the numerous predeprivation

1  safeguards and the state's weighty interest in removing dangerous drivers from the

2  streets adequately protect against the slight risk of an erroneous deprivation. Therefore,

3  the court must grant the DMV's motion to dismiss.

4      The DMV's alleged violations primarily fall under the second Mathews factor: the

5  risk of erroneous deprivation, and the probable value of additional or substitute

6  procedural safeguards.  Lugo contends that the DMV violated his procedural-due-

7  process rights in three ways: (1) the unlawful admission of incriminating evidence and

8  unlawful exclusion of rebuttal evidence, (2) lack of notice informing him of the

9  procedure to request a hearing in the notification letter, and (3) the officer presiding

10 over the hearing was both prosecutor and judge.

11     But Lugo fails to state a procedural-due-process claim under § 1983 for three

12 main reasons.  First, in light of the government's strong interest in safety on the public

13 roads, the hypothetical possibility that an erroneous evidentiary ruling could result in

14 an erroneous license suspension carries little force.  Second, Lugo has no standing to

15 assert lack of notice because Lugo suffered no harm.  Third, Lugo never identifies how

16 the adjudicator's employment at the DMV contributed to the erroneous deprivation of

17 his license—and the mere suggestion of entrenched bias against drivers again pales in

18 comparison to the state's weighty interest in safety on the public roads.  Thus, even

19 assuming some prejudice against drivers generally or Lugo specifically, the court

20 concludes that two predeprivation hearings culminating with independent judicial

21 review adequately insulates against the minor risk of an erroneous deprivation.

22

23 **1.    *The risk of erroneous deprivation of Lugo's driver's license is minimal, and***

24 ***probable values of additional or substitute procedural safeguards are minimal.***

25 *a.    Lugo had available and used California's extensive procedural framework.*

26     California law entitles Lugo to a hearing within ten days of receiving notice of the

27 administrative suspension of his license. Cal. Veh. Code § 14100; Lake v. Reed, 16 Cal.

28 4th 448, 454 n.1 (Cal. 1997).  The California Vehicle Code and Administrative

-9-

07cv109

1    Procedures Act govern administrative hearings. Cal. Veh. Code §§ 14112–14112; Gov.
2    Code §§ 11500–11530.  Though the administrative-hearing framework is less formal
3    than the judicial model, the procedure provides a driver with the opportunity to present
4    and rebut evidence.  Cal. Gov. Code § 11425.10(a)(1).  The presiding hearing officer
5    has discretion to exclude cumulative evidence.  Id. § 11513(f).  But this discretion is
6    limited to the introduction of cumulative evidence that is similarly afforded in judicial
7    actions.  Cf. Cal. Evid. Code § 352; Horn, 17 Cal. 3d at 371.  Also, the driver may seek
8    administrative review of the administrative hearing under California Vehicle Code §
9    14105.  Furthermore, the DMV conducts its own review to determine whether the
10   evidence supports the suspension because the DMV bears the burden of proving
11   grounds for suspension by a preponderance of evidence.  Gikas v. Zolin, 6 Cal. 4th 841,
12   846–47 (1993); Lake, 16 Cal. 4th at 456.

13       After the administrative hearings, the driver may also seek judicial review of the
14   decision through a petition for a writ of mandate to the state court.  Cal. Veh. Code §
15   13559; Gikas, 6 Cal. 4th at 847.  The state court is required to exercise its independent
16   judgment in reviewing whether the weight of the evidence supports the administrative
17   decision.  Lake, 16 Cal. 4th at 456.  The court can order the DMV to rescind the
18   suspension if it finds that the department exceeded either its constitutional or statutory
19   authority, made an erroneous interpretation of the law, acted in an arbitrary and
20   capricious manner, or made a determination not supported by the evidence in the
21   record.  Cal. Veh. Code § 13559(a).

22       Under the second Mathews factor, the risk of erroneous deprivation of Lugo's
23   driver's license is minimal because of the extensive procedural framework he had
24   available and used.  After his arrest for driving under the influence of alcohol, the DMV
25   held two administrative hearings to determine whether Lugo's license should be
26   suspended.  (Compl. ¶¶ 12, 14.)  Prior to the first administrative hearing, Lugo
27   requested that four of his witnesses be allowed to testify at the hearing on his behalf.
28   (Id. ¶ 12.)  Two were permitted to testify.  (Id.)  After hearing their testimony, the

07cv109

hearing officer found that the two witnesses' testimony lacked credibility and contradicted Lugo's admission to the police. (Def.'s Mem. in Supp. at 4.) Thus, the first administrative-hearing officer upheld Lugo's suspension. (Id.)

Lugo then requested departmental review under California Vehicle Code § 14105. (Compl. ¶ 13.) The hearing officer affirmed the ruling excluding the two witnesses and added an explanation justifying her decision. (Def.'s Mem. in Supp. at 4.) The second officer ultimately upheld the suspension. (Id.) Then Lugo invoked his right to judicial review, where the superior court independently reviewed the evidence and upheld the suspension. (Id. at 5.)

Thus, even assuming the hearing officer wrongfully excluded the two witnesses' testimony, and that admitting the testimony would have changed the outcome, Lugo cannot establish that the administrative procedure *as a whole* denied him due process. With two layers of appeal—including full-fledged review in state court—California's license-suspension procedure adequately safeguards against erroneous deprivations of property. Further, Lugo does not anywhere suggest what additional procedural safeguards would work more effectively. Consequently, the court concludes that the second Mathews factor tips in the DMV's favor.

b.    *The statute requiring procedural notice probably does not apply to the notification letter.*

As an initial matter, the court doubts it may entertain Lugo's claim to the extent it challenges the notification letter. Lugo argues that the DMV violated California Vehicle Code § 13353.2(c), requiring the DMV to send a "notice of the order of suspension" that (1) informs the person that the driver's license will be suspended, (2) states the reason and statutory grounds for the suspension, and (3) explains the right to seek an administrative hearing. Gikas v. Zolin, 6 Cal. 4th 841, 846 (Cal. 1993). Because Lugo initiated the administrative hearing, he tacitly admits that he suffered no prejudice from the failure—and therefore, that the procedural safeguard would have been of nominal additional value in protecting against an erroneous deprivation.

-11-

Furthermore, § 13353.2(c) does not conclusively apply to the letter Lugo received on January 8, 2007.  By its own terms, the statute requires notice if the department "immediately" suspends a license under § 13353.2(a).  Lugo, by contrast, received a letter *after* his administrative hearings and judicial review, and over one year *after* the incident.  For obvious reasons, notice of the right to a hearing at that point would have been of no value whatsoever.

c.    *An external procedure would add little value.*

Lugo also argues that the DMV served as both prosecutor and judge, from which the court can only infer a risk of erroneous deprivation due to entrenched bias.  Implicitly, then, Lugo reasons that the DMV could use ordinary civil courts or an outside dispute-resolution agency to adjudicate license suspensions more fairly.  But under Mathews, the abstract possibility of a substitute procedure does not render the existing procedure unconstitutional.  Rather, the court must consider its "the probable value," i.e., the likelihood that a different or additional safeguard would reduce the risk of an erroneous deprivation.  Without some allegation that the DMV's evidentiary rulings are systematically biased against drivers, the court cannot infer that a third-party adjudicator would often accord dispositive weight to admittedly cumulative testimony and arrive at a different outcome.

**2.    *California has a strong interest in removing dangerous drivers from the roads.***

An express legislative purpose of the license-suspension procedure is to ensure public safety on the roads by suspending the driving privileges of suspected drunk drivers.  Cal. Veh Code § 13353.2; MacDonald v. Gutierrez, 81 P.3d 975, 977 (Cal. 2004).  California courts routinely agree that public safety is a substantial state interest.  See Cal. Veh. Code § 13353.2; MacDonald, 81 P.3d at 977; Komizu v. Gourley, 127 Cal. Rptr. 2d 229, 231–32 (2002).  Besides specific deterrence (keeping the suspect off the roads), the statutory scheme provides general deterrence (influencing the conduct

-12-

07cv109

of other would-be drunk drivers).  Under the third <u>Mathews</u> factor, the court cannot doubt that the state's strong interest in public safety outweighs Lugo's important—though not paramount—interest in his driver's license.  <u>Komizu</u>, 127 Cal. Rptr. 2d at 231 (quoting <u>Lake</u>, 16 Cal. 4th at 462).  In <u>Lake</u>, the California Supreme Court upheld an administrative suspension over the petitioner's objections to evidentiary rulings.  The court stated:

> The administrative per se laws were deemed necessary due to the time lag that often occurs between an arrest and a conviction for driving while intoxicated or with a prohibited BAC. During this interim period, arrestees who could eventually be convicted of an intoxication-related driving offense were permitted to continue driving and, possibly, endangering the public thereby. Moreover, without administrative per se laws, persons with extremely high BAC levels at the time of arrest could escape license suspension or revocation by plea bargaining to lesser crimes or entering pretrial diversion. Thus, by providing for an administrative license suspension prior to the criminal proceeding, the law affords the public added protection.

Lugo provides no argument why California's interest in public safety should not yield to Lugo's privilege to operate a motor vehicle upon evidence that he drove while intoxicated.  At best, Lugo alleges that more testimony would have persuaded the DMV hearing officer to disregard a police officer's testimony that he admitted driving.  But even if the procedure did not give the hearing officer discretion to exclude evidence, Lugo could not prevail.  On its face, and as applied against Lugo, the California Vehicle Code presents minimal risk of an erroneous deprivation, the probable value of any additional or substitute procedural safeguards would be minimal, if not nonexistent, and California has a strong interest in public safety requiring predictable hearing dates and prompt decisions.

//

//

//

1   **IV.**   <u>Conclusion</u>

2        For the reasons set forth above, the court **GRANTS** the DMV's motion to

3   dismiss with prejudice.

4        **IT IS SO ORDERED.**

5

6   DATED:  July 24, 2007

7

8                           Hon. Thomas J. Whelan

9                           United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv109